UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAWAZ A., guardian for minor B.A., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C22-0411-MAT <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff appeals a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for disability benefits after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 2009,[1] and is an individual under the age of 18. AR 15. Plaintiff was born in Syria and lived in Lebanon before coming to the United States in 2014. AR 429. Plaintiff has a history of left eye retinoblastoma status post enucleation in 2011 and wears a

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

prosthetic left eye. AR 18. Plaintiff witnessed bombings when she was younger and, by mistake, found pictures of her grandfather being tortured. AR 19, 429. Plaintiff's two grandfathers died in Syria. AR 19, 433.

On behalf of Plaintiff, Plaintiff's mother filed an application for Supplemental Security Income (SSI) on September 20, 2018, alleging disability beginning September 20, 2018. AR 15. The application was denied at the initial level and on reconsideration. On December 15, 2020, the ALJ held a hearing and took testimony from Plaintiff's mother and a medical expert. AR 29–49. On May 26, 2021, the ALJ issued a decision finding Plaintiff not disabled. AR 15–23. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on January 25, 2022, making the ALJ's decision the final decision of the Commissioner. AR 1–6. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

# DISCUSSION

The Commissioner follows a three-step sequential evaluation process for determining whether a child is disabled. *See* 20 C.F.R. § 416.924.

At step one, the agency determines whether the child is performing substantial gainful activity. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. AR 16.

At step two, the agency determines whether the child has a "severe" medically determinable impairment or combination of impairments. The ALJ found that Plaintiff has the following severe impairments: loss of central visual acuity; separation anxiety disorder; and post-traumatic stress disorder (PTSD). AR 16.

At step three, the agency determines whether the child's impairment, or combination of impairments meet, medically equal or functionally equal a listed impairment. In determining functional equivalence, the agency assesses whether the child has a marked limitation in two or an extreme limitation in one of the following "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment and did not, either individually or in combination, functionally equal a listed impairment. AR 16–23.

Plaintiff raises the following issues on appeal: (1) Whether the ALJ erred in failing to find Plaintiff's eye impairment, beyond Loss of Central Visual Acuity, to be a "severe" medically determinable impairment and (2) whether the ALJ erred in failing to properly address the opinions of record. Plaintiff requests remand for further administrative proceedings. The Commissioner

argues the ALJ's decision has the support of substantial evidence and should be affirmed.

1. **Medically Determinable Impairment**

Plaintiff argues that the ALJ erred by characterizing Plaintiff's eye impairment as a loss of central vision acuity and failed to consider fully the limitations caused by Plaintiff's eye impairment. Dkt. 13, at 3. Plaintiff argues that the evidence demonstrates that Plaintiff suffered a loss of her left eye, uses a prosthesis, which causes Plaintiff's irritation and discomfort, and struggles with seeing and reading. *Id.* at 3–5. An ALJ's error in identifying an impairment at step two may be harmless if the ALJ considered any limitations posed by the impairment. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Here, the ALJ addressed Plaintiff's eye impairment at step three of the analysis when assessing Plaintiff's limitations in the six functional domains. AR 17–22; *see* 20 C.F.R. § 416.926a. The ALJ noted that, although Plaintiff has some discomfort with her prosthetic left eye, her right eye is unaffected and "[t]here is no history to suggest visual field deficit in the claimant's right eye." AR 18. The ALJ further noted that, although monocular vision affects depth perception, providers opined that "she does have some depth perception as the brain uses many different depth cues to help the brain and eye work together." AR 18 (citing AR 419). The ALJ found that Plaintiff "has no limitation in moving about and manipulating objects," "is learning to cope with her prosthetic left eye and visual limitations," and "reported she was involved with soccer training 3 times a week." AR 22. Accordingly, the ALJ's decision reflects the ALJ's consideration of limitations posed by Plaintiff's left eye loss and use of a prosthetic. Therefore, any error in the ALJ's description of Plaintiff's eye impairment at step two was harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination").

### 2. Medical Opinion Evidence

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. § 416.920c(a)–(b). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at § 416.920c(c)(1)–(2). Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A. Dr. David Widlan, Ph.D.

Dr. Widlan evaluated Plaintiff on February 2, 2019. AR 429–33. Dr. Widlan diagnosed Plaintiff with PTSD and assessed Plaintiff with "considerable separation anxiety" and "serious deficits in adaptive functioning with more moderate impact regarding cognitive skills." AR 433.

The ALJ found Dr. Widlan's opinion unpersuasive. AR 20. The ALJ found Dr. Widlan's opinion to be "not fully consistent with or supported by the psychological evidence of record" and "also without substantial support from his own evaluation." AR 20. The ALJ further found that Dr. Widlan was not able to review more of Plaintiff's record and based his opinion on Plaintiff's presentation and her and her father's subjective reports, which were "out of proportion to those noted in the treatment records." AR 21.

Plaintiff argues that the ALJ erred by finding Dr. Widlan's opinion to be inconsistent with the psychological evidence of record. Dkt. 13, at 8. An ALJ may reject a medical opinion that is

inconsistent with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Broadly citing treatment records from Asian Counseling and Referral Service, the ALJ found Dr. Widlan's opinion to be inconsistent with "the psychological evidence of record, which indicates no to moderate limitations." AR 20 (citing AR 401, 438–53, 465–72). The ALJ, however, failed to explain how or why the treatment records were inconsistent with Dr. Widlan's opinion, and the evidence cited by the ALJ does not support the ALJ's finding that Plaintiff experienced no to moderate psychological limitations. Rather, records from August 2020 describe Plaintiff experiencing symptoms of depression, trauma, and anxiety, including "sadness, guilt, hopelessness, decreased interest, insomnia, psychomotor agitation, increased fatigue, decreased need for sleep, irritable, social isolation," anger, and excessive worry. AR 471. Treatment notes from March 2017 similarly assess Plaintiff with "[m]arked alteration in arousal and reactivity" from past trauma, including hypervigilance, problems with concentration, sleep disturbance, and exaggerated startle response. AR 453. The treatment notes further describe Plaintiff experiencing issues with individual functioning:

> [Client's] behavior showed a decline in a way that does not compatible [sic] with her stage of development. For example, thumb sucking, acting younger than her actual age, depending on her parents in her daily activities (ADLs). She also experiences separation anxieties when she is away from her parents.

AR 441. Accordingly, the ALJ erred by finding Dr. Widlan's opinion inconsistent with the medical evidence of record, and the ALJ's reasoning was not supported by substantial evidence.

Plaintiff argues that the ALJ erred by finding Dr. Widlan's opinion to be unsupported by his own evaluation. Dkt. 13, at 10. An ALJ may reject a medical opinion that contradicts or is inconsistent with the doctor's own notes or observations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ noted that Dr. Widlan evaluated Plaintiff in the average or slightly above

ORDER
PAGE - 6

average range in intelligence, opined that Plaintiff "has the cognitive ability to succeed in school," and observed Plaintiff to be grossly within normal limits in the mental status examination. AR 21. The ALJ, however, failed to explain how or why these clinical findings were inconsistent with Dr. Widlan's opinion that Plaintiff has "serious deficits in adaptive functioning with moderate impact regarding cognitive skills." AR 433. Indeed, Dr. Widlan found that Plaintiff does not suffer from borderline intellectual functioning. AR 433. The ALJ further failed to discuss Dr. Widlan's clinical findings that clearly relate to adaptive functioning and support the doctor's opinion, including that Plaintiff became upset when asked if she could take a bath by herself, refuses to dress herself or do any household chores, does not like to be alone even when using the toilet, and displayed some concentration, persistence, and pace deficits during the examination. AR 430–32. Therefore, the ALJ erred by finding Dr. Widlan's opinion inconsistent with and unsupported by the doctor's own clinical findings, and the ALJ's reasoning was not supported by substantial evidence.

Plaintiff next argues that the ALJ improperly rejected Dr. Widlan's opinion because it was based on a single consultative examination and the doctor reviewed limited records. Dkt. 13, at 12. Social Security regulations provide that "[a] medical source may have a better understanding of [a claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder." 20 C.F.R. § 416.920c(3)(v). Here, Dr. Widlan examined Plaintiff and provided clinical findings based on that evaluation. The regulations do not require an examining physician to review all of a claimant's medical records—indeed, even a consulting physician is not required to review all of a claimant's background records when assessing a claimant's limitations. *See Walshe v. Barnhart*, 70 Fed. Appx. 929, at *1 (9th Cir. July 16, 2003). Therefore, the ALJ did not properly reject Dr. Widlan's opinion on grounds that the doctor did not review more records.

ORDER
PAGE - 7

Finally, Plaintiff argues that the ALJ improperly rejected Dr. Widlan's opinion because he relied upon reports from Plaintiff and Plaintiff's father. Dkt. 13, at 12–13. "[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008). Here, Dr. Widlan did not discredit Plaintiff's and Plaintiff's father's reports regarding Plaintiff's deficits in adaptive behavior and activities of daily living. AR 429–30, 432. The doctor further supported his opinion with his own observations, including noting that Plaintiff became upset when asked about bathing herself and that Plaintiff exhibited some deficits in concentration, persistence, and pace during the examination. AR 430–432. Therefore, the ALJ's rejection of Dr. Widlan's opinion on grounds that the doctor relied on Plaintiff's and Plaintiff's father's reports was not supported by substantial evidence.

As discussed above, the ALJ improperly evaluated the consistency and supportability of Dr. Widlan's opinion, and the ALJ's rejection of the doctor's opinion lacks the support of substantial evidence. The ALJ's error was not harmless because the ALJ failed to fully consider Dr. Widlan's opinion when assessing Plaintiff limitations in the six functional domains. AR 17–22. Specifically, Dr. Widlan assessed Plaintiff with "serious deficits in adaptive functioning" and noted that Plaintiff exhibited deficits in concentration, persistence, and pace, which limitations may impact several domains of functioning, including acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself. *See* 20 C.F.R. § 416.926a. Therefore, the Court concludes that this matter should be reversed for the ALJ to reevaluate the consistency and supportability of Dr. Widlan's opinion and reassess Plaintiff's functional limitations in the six domains as warranted by further consideration of the evidence.

ORDER
PAGE - 8

## CONCLUSION

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings.

DATED this 27th day of February, 2023.

MARY ALICE THEILER
United States Magistrate Judge